IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| HECTOR MARROQUIN GALDAMEZ,<br><br>　Plaintiff,<br><br>v.<br><br>DIRECTOR GAIL WATTS, *et al.*,<br><br>　Defendants. | Civil Action No.: JRR-21-3006 |

## MEMORANDUM OPINION

Pending before the court is the Motion to Dismiss, or in the Alternative, for Summary Judgment filed by Defendants Director Gail Watts and Correctional Officer Jebboe Sherman. ECF No. 16 (hereafter the "Motion"). Defendants seek dismissal or summary judgment in their favor on the claims asserted against them in Plaintiff Hector Marroquin Galdamez's complaint and supplements (ECF Nos. 1, 8-10). Mr. Galdamez was informed by the Court, pursuant to *Roseboro v. Garrison*, 528 F.2d 309 (4th Cir. 1975), that his failure to file a response in opposition to the Motion could result in dismissal of the complaint. ECF No. 17. To date, he has not filed a response to the Motion. Upon review of the record, a hearing is not necessary. Local Rule 105.6 (D. Md. 2021). For the reasons stated below, Defendants' Motion, construed as one seeking summary judgment, shall be granted.[1]

## BACKGROUND

**Complaint Allegations**

Mr. Galdamez is self-represented and currently incarcerated in the Baltimore County Detention Center ("BCDC") in Towson, Maryland. He alleges that in October 2021, while housed

---

[1] Also pending is Defendants' Motion for Enlargement of Time, filed May 2, 2022, seeking additional time to file their response to the Complaint. ECF No. 15. As Defendants subsequently filed their dispositive motion on May 20, 2022, the Motion for Enlargement of Time will be denied as moot.

in Unit 4H, he was stabbed multiple times by two MS13 gang members while in the recreation hall because they believe he is a member of the "18th gang" and he refused to give them his commissary food. ECF No. 1 at 2; ECF No. 8 at ¶ 2. He states that the attack took place in view of a camera but the officer in the control booth, later identified as Correctional Officer Jebboe Sherman, failed to immediately act or call a code to assist Mr. Galdamez. ECF No. 1 at 3; ECF No. 8 at ¶ 1. Mr. Galdamez attempted to get Officer Sherman's attention, but was ignored. ECF No. 10 at 1. He asserts that Sherman often ignores inmate requests for hours, ignoring the call button. *Id.* Mr. Galdamez was transported to St. Joseph Hospital for medical treatment. ECF No. 1 at 3.

**Defendants' Response**

Officer Sherman avers that on October 3, 2021, he was assigned to BCDC Housing Unit 4G/H. ECF No. 16-2 at ¶ 6 (Decl. Jebboe Sherman). At approximately 10:00 p.m., he saw inmates Jeyson Santos-Martinez and Daniel Castillo approach Mr. Galdamez in the 4H dayroom. *Id.* The two inmates assaulted Mr. Galdamez, knocking him to the ground, and then used a "sharpened object" to stab Mr. Galdamez in the face. *Id.* at ¶ 7. Sherman attests that he called a Code 2 – an emergency request for all available correctional and medical staff. *Id.* at ¶ 8. As staff began to respond, Mr. Santos-Martinez ran back to his cell while Mr. Castillo continued the assault. *Id.* at ¶ 9. Mr. Castillo ignored orders to stop until Sergeant April Palmer sprayed his face with Oleoresin Capsicum. ECF No. 16-5 at ¶¶ 10-11 (Decl. April Palmer). Sgt. Palmer handcuffed Mr. Castillo and all three men were taken to the medical department. *Id.* at ¶¶ 12-13. Mr. Galdamez was taken to St. Joseph Hospital for additional treatment. ECF No. 16-2 at ¶ 14.

Both Mr. Castillo and Mr. Santos-Martinez received 45 days in disciplinary segregation. *Id.* at ¶ 15. A "keep separate" order was issued for each inmate in the Jail Management System and Mr. Galdamez was granted protective custody on October 4, 2021, at his request, upon his discharge from the hospital. *Id.* at ¶ 16; ECF No. 16-5 at ¶ 19.

Director Watts attests that Mr. Galdamez did not submit any request to transfer housing assignment or inform any BCDC officers that he felt unsafe prior to the October 3, 2021 incident. ECF No. 16-3 at ¶ 24 (Decl. Gail Watts).  Upon admission to BCDC, inmates are informed that they are expected to report to Classification Officers if they know of any inmate that poses a threat to their safety while incarcerated.  *Id.* at ¶ 13; ECF No. 16-4 at 2 (Inmate Handbook).  Classification officers visit housing units at least three times a week.  ECF No. 16-4 at 3.  Inmates may also request protective custody from any correctional officer if they feel their safety is in jeopardy. ECF No. 16-3 at ¶ 14.  Sgt. Palmer avers that Mr. Galdamez did not report any issues with the assaulting inmates or request to be transferred from his housing unit; nor did she witness any issues between them prior to October 3, 2021.  ECF No. 16-5 at ¶¶ 20-22.

## STANDARDS OF REVIEW

A.      **Motion to Dismiss**

Defendants' Motion is styled as a motion to dismiss under FED. R. CIV. P. 12(b)(6) or, in the alternative, for summary judgment under FED. R. CIV. P. 56.  A motion styled in this manner implicates the court's discretion under Rule 12(d) of the Federal Rules of Civil Procedure. *Kensington Vol. Fire Dept., Inc. v. Montgomery County*, 788 F. Supp. 2d 431, 436-37 (D. Md. 2011).  Ordinarily, a court "is not to consider matters outside the pleadings or resolve factual disputes when ruling on a motion to dismiss." *Bosiger v. U.S. Airways*, 510 F.3d 442, 450 (4th Cir. 2007).  Under Rule 12(b)(6), however, a court may exercise its discretion to consider matters outside of the pleadings. If the court does so, "the motion must be treated as one for summary judgment under Rule 56," but "[a]ll parties must be given a reasonable opportunity to present all the material that is pertinent to the motion."  FED. R. CIV. P. 12(d); *see also Adams Housing, LLC v. The City of Salisbury, Maryland*, 672 F. App'x 220, 222 (4th Cir. Nov. 29, 2016) (*per curiam*). When the movant requests summary judgment "in the alternative" to dismissal, and submits

3

matters outside the pleadings for the court's consideration, the parties are deemed on notice that conversion under Rule 12(d) may occur; the court "does not have an obligation to notify parties of the obvious." *Laughlin v. Metro. Wash. Airports Auth.*, 149 F.3d 253, 261 (4th Cir. 1998).

In contrast, a court may not convert a motion to dismiss to one for summary judgment *sua sponte*, unless it gives 12(d) notice to the parties that it will do so. *Laughlin*, 149 F.3d at 261 (stating that a district court "clearly has an obligation to notify parties regarding any court-instituted changes" in the posture of a motion, including conversion under Rule 12(d)); *Finley Lines Joint Protective Bd. Unit 200 v. Norfolk So. Corp.*, 109 F.3d 993, 997 (4th Cir. 1997) ("[A] Rule 12(b)(6) motion to dismiss supported by extraneous materials cannot be regarded as one for summary judgment until the district court acts to convert the motion by indicating that it will not exclude from its consideration of the motion the supporting extraneous materials."); *see also Adams Housing, LLC*, 672 F. App'x at 622 ("The court must give notice to ensure that the party is aware that it must 'come forward with all of [its] evidence.'") (citation omitted).

A district judge has "complete discretion to determine whether or not to accept the submission of any material beyond the pleadings that is offered in conjunction with a Rule 12(b)(6) motion and rely on it, thereby converting the motion, or to reject it or simply not consider it." 5 C WRIGHT & MILLER, FEDERAL PRACTICE & PROCEDURE § 1366 at 159 (3d ed. 2004, 2011 Supp.). This discretion "should be exercised with great caution and attention to the parties' procedural rights." *Id*. at 149. In general, courts are guided by whether consideration of extraneous material "is likely to facilitate the disposition of the action" and "whether discovery prior to the utilization of the summary judgment procedure" is necessary. *Id*. at 165, 167.

**B.     Discovery**

Ordinarily, summary judgment is inappropriate "where the parties have not had an opportunity for reasonable discovery." *E.I. du Pont De Nemours and Co. v. Kolon Industries*, *Inc.*,

637 F.3d 435, 448-49 (4th Cir. 2012); *see Putney v. Likin*, 656 F. App'x 632, 638-39 (4th Cir. July 14, 2016) (*per curiam*); *McCray v. Maryland Dep't of Transportation*, 741 F.3d 480, 483 (4th Cir. 2015). However, "the party opposing summary judgment 'cannot complain that summary judgment was granted without discovery unless that party has made an attempt to oppose the motion on the grounds that more time was needed for discovery.'" *Harrods Ltd. v. Sixty Internet Domain Names*, 302 F.3d 214, 244 (4th Cir. 2002) (quoting *Evans v. Techs. Applications & Serv. Co.*, 80 F.3d 954, 961 (4th Cir. 1996)). To raise adequately the issue that discovery is needed, the non-movant typically must file an affidavit or declaration pursuant to Rule 56(d) (formerly Rule 56(f)), explaining why, "for specified reasons, it cannot present facts essential to justify its opposition," without needed discovery. Fed. R. Civ. P. 56(d); *see Harrods*, 302 F.3d at 244-45 (discussing affidavit requirement of former Rule 56(f)).

"[T]o justify a denial of summary judgment on the grounds that additional discovery is necessary, the facts identified in a Rule 56 affidavit must be 'essential to [the] opposition.'" *Scott v. Nuvell Fin. Servs., LLC*, 789 F. Supp. 2d 637, 641 (D. Md. 2011) (alteration in original) (citation omitted). A non-moving party's Rule 56(d) request for additional discovery is properly denied "where the additional evidence sought for discovery would not have by itself created a genuine issue of material fact sufficient to defeat summary judgment." *Strag v. Bd. of Trs., Craven Cmty. Coll.*, 55 F.3d 943, 954 (4th Cir. 1995); *see Amirmokri v. Abraham*, 437 F. Supp. 2d 414, 420 (D. Md. 2006), *aff'd*, 266 F. App'x. 274 (4th Cir.), *cert. denied*, 555 U.S. 885 (2008).

If a non-moving party believes that further discovery is necessary before consideration of summary judgment, the party fails to file a Rule 56(d) affidavit at his peril, because "'the failure to file an affidavit . . . is itself sufficient grounds to reject a claim that the opportunity for discovery was inadequate.'" *Harrods*, 302 F.3d at 244 (citations omitted). But, the non-moving party's failure to file a Rule 56(d) affidavit cannot obligate a court to issue a summary judgment ruling

5

that is obviously premature. Although the Fourth Circuit has placed "'great weight'" on the Rule 56(d) affidavit, and has said that a mere "'reference to Rule 56(f) [now Rule 56(d)] and the need for additional discovery in a memorandum of law in opposition to a motion for summary judgment is not an adequate substitute for [an] affidavit,'" the appellate court has "not always insisted" on a Rule 56(d) affidavit. *Id*. (internal citations omitted).

Failure to file an affidavit may be excused "if the nonmoving party has adequately informed the district court that the motion is premature and that more discovery is necessary," and the "nonmoving party's objections before the district court 'served as the functional equivalent of an affidavit.'" *Harrods*, 302 F.3d at 244-45 (internal citations omitted); *see also Putney*, 656 F. App'x at 638; *Nader v. Blair*, 549 F.3d 953, 961 (4th Cir. 2008). Moreover, "[t]his is especially true where, as here, the non-moving party is proceeding pro se." *Putney*, 656 F. App'x at 638. Here, Mr. Galdamez has not responded to Defendants' Motion nor made any request for discovery.

**C.   Summary Judgment**

Summary judgment is governed by FED. R. CIV. P. 56(a), which provides in part: "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." The Supreme Court has clarified that this does not mean that any factual dispute will defeat the motion. "By its very terms, this standard provides that the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986) (emphasis in original).

"The party opposing a properly supported motion for summary judgment 'may not rest upon the mere allegations or denials of [his] pleadings,' but rather must 'set forth specific facts showing that there is a genuine issue for trial.'" *Bouchat v. Baltimore Ravens Football Club, Inc.*,

6

346 F.3d 514, 525 (4th Cir. 2003) (alteration in original) (quoting Fed. R. Civ. P. 56(e)), *cert. denied*, 541 U.S. 1042 (2004). The court should "view the evidence in the light most favorable to . . . the nonmovant, and draw all inferences in her favor without weighing the evidence or assessing the witnesses' credibility." *Dennis v. Columbia Colleton Med. Ctr., Inc.*, 290 F.3d 639, 644-45 (4th Cir. 2002); *see FDIC v. Cashion*, 720 F.3d 169, 173 (4th Cir. 2013).

The district court's "function" is not "to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson*, 477 U.S. at 249. Moreover, the trial court may not make credibility determinations on summary judgment. *Jacobs v. N.C. Administrative Office of the Courts*, 780 F.3d 562, 569 (4th Cir. 2015); *Mercantile Peninsula Bank v. French*, 499 F.3d 345, 352 (4th Cir. 2007); *Black & Decker Corp. v. United States*, 436 F.3d 431, 442 (4th Cir. 2006); *Dennis*, 290 F.3d at 644-45. Therefore, in the face of conflicting evidence, such as competing affidavits, summary judgment is generally not appropriate, because it is the function of the factfinder to resolve factual disputes, including matters of witness credibility.

Nevertheless, to defeat summary judgment, conflicting evidence, if any, must give rise to a *genuine* dispute of material fact. *See Anderson*, 477 U.S. at 247-48. If "the evidence is such that a reasonable jury could return a verdict for the nonmoving party," then a dispute of material fact precludes summary judgment. *Id*. at 248; *see Libertarian Party of Va. v. Judd*, 718 F.3d 308, 313 (4th Cir. 2013). On the other hand, summary judgment is appropriate if the evidence "is so one-sided that one party must prevail as a matter of law." *Id*. at 252. Similarly, "the mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." *Id*.

Because plaintiff is self-represented, his submissions are liberally construed. *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007). But, the court must also abide the "'affirmative obligation of

7

the trial judge to prevent factually unsupported claims and defenses from proceeding to trial.'" *Bouchat*, 346 F.3d at 526 (internal quotation marks omitted) (quoting *Drewitt v. Pratt*, 999 F.2d 774, 778–79 (4th Cir. 1993), and citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24 (1986)).

## DISCUSSION

Section 1983 imposes civil liability on a person who, under color of state law, deprives any citizen of the United States or other person under the jurisdiction thereof of any right secured by the Constitution or laws of the United States. It "is not an independent source of substantive rights, but simply a vehicle for vindicating preexisting constitutional and statutory rights." *Safar v. Tingle*, 859 F.3d 241, 245 (4th Cir. 2017) (citing *Graham v. Connor*, 490 U.S. 386, 393-94, (1989)). Here, Mr. Galdamez raises a failure to protect claim against Defendants. A failure to protect claim raised by a pretrial detainee is analyzed under the Fourteenth Amendment and the two-part inquiry established in *Farmer v. Brennan*, 511 U.S. 825 (1994). *Brown v. Harris*, 240 F.3d 383, 388-90 (4th Cir. 2001) (applying *Farmer* to a pretrial detainee's failure to protect claim); *see also Perry v. Barnes*, Civ. No. PWG-16-705, 2019 U.S. Dist. LEXIS 34596, at *3 (D. Md. March 5, 2019) (same).

First, "[f]or a claim based on a failure to prevent harm, a person must show that he is being detained, or incarcerated 'under conditions posing a substantial risk of serious harm.'" *See Brown*, 240 F.3d at 389 (quoting *Farmer*, 511 U.S. at 834). Objectively, the prisoner "must establish a serious deprivation of his rights in the form of a serious or significant physical or emotional injury" or substantial risk of either injury. *Danser v. Stansberry*, 772 F.3d 340, 346-47 (4th Cir. 2014). The objective inquiry requires this Court to "assess whether society considers the risk that the prisoner complains of to be so grave that it violates contemporary standards of decency to expose *anyone* unwillingly to such a risk." *Helling v. McKinney*, 509 U.S. 25, 36 (1993). A genuine

dispute of fact regarding the extent of the injury suffered precludes summary judgment. *Raynor v. Pugh*, 817 F.3d 123, 128 (4th Cir. 2016).

Second, a plaintiff must establish that the prison official involved had "a sufficiently culpable state of mind," which, in this context, "is one of deliberate indifference to inmate health or safety." *Farmer*, 511 U.S. at 834 (internal quotation marks and citations omitted). This subjective inquiry requires evidence that the official had actual knowledge of an excessive risk to the prisoner's safety—"the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists; and he must also draw the inference." *Id* at 837. A plaintiff may "prove an official's actual knowledge of a substantial risk 'in the usual ways including inference from circumstantial evidence,'" and "'a factfinder may conclude that a prison official knew of a substantial risk from the very fact that the risk was obvious.'" *Raynor*, 817 F.3d at 128 (quoting *Farmer*, 511 U.S. at 842).

Actual knowledge of a substantial risk does not alone impose liability. "[A] prison official cannot be found liable under the Eighth Amendment for failing to protect an inmate unless the official knows of an excessive risk of danger to inmate health and safety, and the official knowingly and deliberately acts, or fails to act, in a manner that uniquely increases the risk." *Hopkins v. Maryland*, WMN-99-2216, 2000 WL 1670991, at *3 (D. Md. Sept. 26, 2000) (citing *Farmer*, 511 U.S. at 837; *Rich v. Bruce*, 129 F.3d 336, 338-340 (4th Cir. 1997)). However, where prison officials responded reasonably to a risk, they may be found free of liability. *Farmer*, 511 U.S. at 844.

Here, it is undisputed that Mr. Galdamez was stabbed multiple times during the course of the assault. According to the medical records provided, he had a three- to four-centimeter wound to his left cheek, a four- to five-centimeter wound behind his left ear, and a one-centimeter wound

to his right arm as well as scattered abrasions.  ECF 16-6 at 2 (Medical Records).  Objectively, the court finds that Mr. Galdamez suffered a significant physical injury.

There is nothing in the record, however, to suggest or demonstrates that Sherman or Watts had actual knowledge, prior to the assault, that Mr. Castillo and/or Mr. Santos-Martinez posed a danger to Mr. Galdamez.  There is no evidence that he reported his fears of the MS13 gang or his assailants to Defendants or any BCDC staff prior to his request for protective custody on October 4, 2021, after the attack.  No dispute of fact, therefore, exists on this issue.  As neither Defendant had actual knowledge of a risk of harm to Mr. Galdamez, Defendants could not have been deliberately indifferent.  Accordingly, Defendants are entitled to summary judgment in their favor.

## Conclusion

By separate accompanying order which follows, the alternative motion for summary judgment is granted, and the Clerk Is directed to enter judgment in favor of Defendants Gail Watts and Jebboe Sherman.

Date: 10.26.2022                                       _____/S/_____
                                                                    Julie R. Rubin
                                                                    United States District Judge